We have four issues before this court. The first two are tangled with the last two. The first one that I'm going to address is the BIA abuses discretion by not addressing the petitioner's claim for Article 3 of the Convention Against Torture. Although government argues that the motion to reconsider should not be part of the administrative record and not before this court, but since the petitioner filed a supplemental motion raising the Article 3 of the Convention Against Torture claim, BIA did never address this claim. And the second issue is the asylum claim that BIA did not consider the documentation that was provided to BIA, especially the asylum profile, which distinctively addresses the situation for Mujahideen within the country of Iran. What do we have in the record as to the conditions in Iran and their treatment of the, I don't know how to pronounce it, Mujahideen? What's in the record? We submitted to BIA six documents, 1998 U.S. Department of State's country report on human rights, 1998 Amnesty International annual report on Iran, asylum profile, 1997, which is still the most current one, and three articles. That were downloaded from iraniazad.org from internet. They clearly stated that Mujahideen were persecuted in Iran. They were arrested, they were detained, they were tortured, they were executed. And there is no doubt about that. And BIA only addressed one of the exhibits, which was the Amnesty International report of 1998, and did not address any of the other documentation that was submitted to BIA. And they are all part of the administrative records. Apparently your client was not a member of the group, but was kind of a hanger-on or a sister? That's true, your honor. And you don't have to be a member of Mujahideen to be subject to persecution in Iran per asylum profile. Even people who are suspected of being active for Mujahideen, they are also subject to persecution. Is this a claim of imputed political opinion? Or is it a claim that he had some association with them and he was suspected of more than he had? No, he did have some association. When he was young, he was selling their newspapers on the street. He was distributing their newspapers on the street, and that's what they did those days. Not necessarily he was a member of the organization, but he was, so to speak, somebody who sympathized with Mujahideen. And they were the same way persecuted by the Islamic government of Iran. The BIA does appear to have considered this claim, but dismissed it on the ground that you hadn't even presented a prima facie case that was more likely than not that they'd be tortured if returned to Iran, citing a CFR. So you said they didn't consider it. It appears to me they did consider it and said you didn't even create a prima facie case for some of the reasons that we're just discussing. Your honor, I should admit that the brief to BIA was not a flawless brief, but the documentation attached to the brief clearly demonstrated that the Mujahideen were persecuted. But your client was not a member. He was not a member. So doesn't that support the BIA's view that there's no prima facie case? And what does it say that people who sold newspapers and were in sympathy with were also tortured? Well, it is in the documentation. The asylum profile confirms that they are subject to. So I think BIA made an error by not considering that. And also we have, I think the main issue that we raised before BIA was ineffective assistance of counsel and the ineffective assistance of interpreter. We complied with Lozada requirements and BIA did not remind the case to immigration judge for reconsideration or rehearing of the claim. This gentleman was not, his case was not. We are considering only the denial of the motion to reopen. Is that right? I'm sorry, sir? We're considering the motion to reopen. What are we? That's part of our.  No, also the motion to reopen. We had a motion to remand, Your Honor. And based on that motion, well, the history is this. We filed the motion to reopen the case with immigration judge two days before we filed the appeal. Immigration judge said, I don't have jurisdiction. Therefore, send the motion to reopen to BIA. And we supplemented the motion. We requested this motion to be considered as a motion to remand based on ineffective assistance of counsel and also ineffective assistance of interpreter. This motion was unopposed by government. But BIA looked at it and said, I don't know what, we don't know what more evidence would have done. So we don't see any basis for reopening. Or remanding at this time. Or remanding. So are we reviewing anything other than the discretionary decision to remand? Are we reviewing the underlying order as well? I believe we are reviewing both of them, Your Honor. You took a timely appeal? Other than the petition for a remand. You said I don't want to reopen, right?  You want to reopen. No, remand. No, you asked IJ to reopen. IJ said, I can't do it. So you went to the BIA and you said... And we supplemented. We said, this is a motion to remand now. We didn't say, this is a motion to reopen. We said, this is a motion to remand to IJ to hear the case again. Was it also an appeal from the... That's correct. And that's before us. That's before you too, yes. And later we supplemented it with another motion for a CAT claim. That motion was also unopposed by government. Okay. Thank you. The last thing I wanted to mention is about the ineffective assist of interpreter. He was forced to testify in English. He wasn't forced. He was asked to speak English. His counsel should have stopped him because his English clearly, after the first few minutes, it was clear that he could not speak English well enough to explain his case. He was confused by his limited vocabulary. Therefore, we think that he deserves to be considered as he wasn't assisted by interpreter. Okay. Thank you. Good morning. May it please the Court. My name is Shelley Good and I represent the respondent in this matter. The Board's decision should be affirmed, first of all, because the Board's underlying denial of asylum was supported by substantial evidence. And in addition, the Board did not abuse its discretion in denying Mr. Jaheed's motion to reopen where the motion failed to establish prejudice stemming from his alleged allegations of ineffective assistance of counsel and inadequate translation. In addition, the Board's May 22, 2002 decision denying Mr. Jaheed's motion to reconsider to allow him to apply for torture convention is not properly before the Court. Why? That's because Mr. Jaheed did not file a petition for review of that order. He filed a petition for review of the Board's denial of asylum and the motion to remand but did not file a petition for review of that order and instead asked this Court to supplement the administrative record in this matter, but that was not the appropriate procedure for him to follow. He raised the torture claim for the first time before the Board. Yes, he did. Just to help me understand the sequence, he did not raise it before the IJ. That's correct. And he raised it in a motion before the Board to supplement the record on that. What he did is, after the IJ's denial of asylum, Mr. Jaheed filed a motion to reopen or reconsider before the IJ. Two days after that, he filed a notice of appeal to the Board of Immigration Appeals so that the immigration judge then forwarded the previously filed motion to reopen or reconsider to the Board because the Board had been vested with jurisdiction. The Board has an appeal? Yes. It has a motion to reopen? Yes, or a motion to remand was what it was deemed at that time. And during the period in which the Board was considering the appeal and the motion to remand, Mr. Jaheed filed a motion to supplement the motion to remand, asking the Board to consider his claim under torture convention. When was the torture convention passed in connection with this? It came in about the time that he made the motion? I don't know if it's about the time. I think it is true he could not have asked the immigration judge for protection under torture convention because it had not been enacted at that time. So he files this other motion to supplement the remand motion. That's correct. To ask for remand for consideration of the torture convention as well. And now you say that it was a petition of a view to us that the torture convention issue is not raised. That's correct. I thought reviews are of orders and not of issues. Am I mistaken about that? That's correct. There was a petition for review filed. If he files a petition for review of the order, why doesn't that cover everything that's in the order? Well, the Board did not address the torture convention claim in its denial of the motion to remand. Did it ever address it in a different order? What happened is after that, when Mr. Zahid filed the motion to reconsider to the Board, indicating to the Board that it failed to address the torture convention claim, that motion was unfortunately untimely. And then the Board issued its May 22, 2002, order in which it denied the motion to reconsider as untimely. But as Judge Trott pointed out in the footnote, the Board did indicate that Mr. Zahid had failed to establish a prima facie case for protection under the torture convention. So the Board did address the torture convention claim, although it's not before this Court. And they filed a motion and made out a prima facie case. The Board might have remanded it and allowed it to start all over. Correct. In the sense it's a failure to exhaust argument. What was the timing that established the untimeliness? The motion to reconsider had to be filed within 30 days of the issuance of the Board's May 22, 2000, order. And it was not. I don't remember exactly what day it was filed, but it was filed untimely. Okay. If there are no other questions, the Government will rest. Thank you. The case is argued. We'll stand some minutes.
judges: B.fletcher, Kozinski, Trott